IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GALE RACHUY,

                Petitioner,              OPINION AND ORDER

  v.

                                                 15-cv-235-wmc
                                                 10-cr-141-wmc

UNITED STATES OF AMERICA,

                Respondent.

      In 2011, petitioner Gale Rachuy pleaded guilty to a charge of knowingly transporting a stolen vehicle across state lines in violation of 18 U.S.C. § 2312. *United States v. Rachuy*, Case No. 10-cr-141-wmc. On February 6, 2012, this court sentenced him to serve 90 months in prison, to be followed by 3 years of supervised release. The petitioner filed and lost a direct appeal, a motion to withdraw his guilty plea and several motions related to seized property. He has now filed a motion for post-conviction relief under 28 U.S.C. § 2255, arguing that his conviction and sentence should be vacated for numerous reasons. The petitioner has also filed several motions to supplement his petition with additional grounds for relief, as well as motions requesting release from custody, an evidentiary hearing and orders compelling discovery from the government.

      The court will grant petitioner's motions to supplement his petition with additional claims, but will deny his requests for release, discovery and an evidentiary hearing. Indeed, *none* of petitioner's challenges support overturning his conviction or reducing his sentence, either because: (1) they were previously decided against him on appeal; or (2) he has no evidence to support them. Accordingly, his petition will be denied.

1

BACKGROUND

Following a joint investigation by federal and state officials in Minnesota and Wisconsin, Rachuy was charged with transporting stolen vehicles across state lines, as part of a scheme to commit fraud. He stole the vehicles by passing worthless checks drawn on four bank accounts that he knew were closed or had no funds. Rachuy entered into a written plea agreement with the government, agreeing to plead guilty to Count 4 of the superseding indictment. That count carried a maximum prison sentence of 10 years, but the parties agreed to recommend that the court impose a 5-year sentence of imprisonment followed by a 3-year term of supervised release that would run concurrently with a sentence Rachuy was serving in Minnesota. (Dkt. #67 at 2, in 10-cr-141-wmc.) Among other things, the government also promised:

> 4. . . .[T]o recommend that the court calculate loss amount based only on the checks returned on the four bank accounts involved in the purchase of the vehicles charged in the superseding indictment. . . . [and]
>
> 6. [N]ot to oppose any request by Rachuy for return of any of his property currently held in the custody of state or local authorities.

The plea agreement also included a provision stating that:

> By his signature below, the defendant acknowledges his understanding that the United States has made no promises or guarantees regarding the sentence which will be imposed. The defendant also acknowledges his understanding that the Court is not required to accept any recommendations which may be made by the United States and that the Court can impose any sentence up to and including the maximum penalties set out above.

(*Id.* at 3.)

At the November 8, 2011, plea hearing, the court discussed with Rachuy what expectations he had, if any, as to the specific or particular sentence that he might receive. As

an initial matter, the court confirmed with Rachuy's counsel that he had discussed with his client the possibility of receiving the maximum penalties applying to the offense. (Dkt. #90 at 4, in 10-cr-141-wmc.) The court then asked Rachuy a series of questions to confirm that his plea was knowing and voluntary. (*Id.* at 4-10, 14.) Rachuy acknowledged that he understood the terms of his agreement, and in particular (1) the rights he was giving up by pleading guilty and (2) that he would not be free to withdraw his guilty plea, even if the court decided not to follow the government's recommendations regarding sentencing. (*Id.* at 4-10, 14-15.) The government then summarized the evidence that would be offered at trial to prove Rachuy's guilt, including that: (1) he stole a Pathfinder from Kathy Sheff by giving her a check for $3,600 written on a closed Bank of America account in exchange for the keys to the vehicle; (2) he knew the account had no money in it at the time he wrote the check; and (3) he took the stolen vehicle across state lines. (*Id.* at 16-22.) After the government's recitation of this evidence, Rachuy also acknowledged that the government would be able to prove these facts at trial. (*Id.* at 22.)

The court then asked Rachuy to explain in his own words what happened. Rachuy stated first that he "bought a vehicle with no means of paying for it" and then caused the vehicle to be transported to Wisconsin. (*Id.* at 22-23.) He then stated that at one point, he was "on [his] way to meet Kathy Sheff to pay her," but she called and said "she was not going to be around." (*Id.* at 23.) The court then asked follow-up questions regarding Rachuy's intent:

> Court: When you wrote the check, you know you did not have funds to pay –
> Rachuy: Yes, I did.

3

>Court: -- for the car.
>
>Rachuy: That's correct.
>
>Court: And you caused it to be driven away across state lines knowing you had provided no monies to pay for it.
>
>Rachuy: That's correct.

(*Id.*)

The government further asked that Rachuy expressly confirm that he not only knew there were no funds in the checking account, but knew it was a *closed* account at the time he gave Ms. Sheff the check. (*Id.*) Rachuy responded that he could not admit knowing that the account was closed, but that he did know that the account had no money in it. (*Id.* at 24.) The court then allowed the parties to confer about whether Rachuy's statements were sufficient. After a short break, the court again asked Rachuy to explain his knowledge as to the lack of funds in the account at the time he provided the check to Ms. Sheff. Rachuy responded as follows:

>I gave her a check. There was no funds in the account. There will not be any funds in that account, not one nickel. I took the vehicle and it was taken across state line.

(*Id.* at 25.)

The court then clarified a third time that "at the time you provided the check, you intended that there be no funds paid." Rachuy responded, "Absolutely." (*Id.* at 26.) The parties then agreed that Rachuy's responses were sufficient. (*Id.*)

A presentence investigation report was filed on January 17, 2012. Paragraphs 26 and 27 of that report detail the facts relating to Count 4 of the indictment to which Rachuy pleaded guilty. The report describes the bank account upon which Rachuy wrote the check to Sheff as

a closed checking account. Rachuy's defense counsel indicated Rachuy had no objection to the presentence report. (Dkt. #75, in 10-cr-141-wmc.) At the sentencing hearing on February 3, 2012, Rachuy confirmed that he had sufficient time to review the presentence report and addendum. (Dkt. #91 at 3, in 10-cr-141-wmc.)

During the sentencing hearing, the court found that Rachuy had a total offense level of 14 and a criminal history category of VI, resulting in an advisory guideline imprisonment range of 37 to 46 months. (*Id.* at 4.) The court went on to note that Rachuy had "an extraordinary criminal history," with almost 30 convictions over 40 years, most of which involved fraud, and that the court was having "substantial trouble arriving at [the joint recommendation of] 60 months given [Rachuy's] behavior." (*Id.* at 5, 7.) The court expressed concern that "a category of VI significantly underrepresents the seriousness of the defendant's criminal history" and that "a custodial sentence of as much as ten years would be reasonable." (*Id.* at 14-15.) After taking the input of counsel into consideration, the court found that a sentence of 90 months was reasonable and no greater than necessary to satisfy the statutory purposes of sentencing. (*Id.* at 15.)

Rachuy appealed, arguing that: (1) the government had breached the plea agreement in a number of ways; and (2) the court had failed to give him credit for time served on a sentence for a related state conviction. The Seventh Circuit rejected both arguments, affirming the conviction and sentence. *United States v. Rachuy*, 743 F.3d 205 (7th Cir. 2014).

OPINION

The petitioner seeks relief under 28 U.S.C. § 2255, which "is reserved for extraordinary

situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996), involving "errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted). The petitioner identified seven separate grounds for relief in his initial petition, along with multiple additional grounds identified as "sub-grounds." He further advanced several, additional grounds in supplemental filings. (Dkt. ##15, 17, 20.) All of his claims fall into the following, general categories: (1) the government could not have proven its case; (2) the government failed to disclose exculpatory evidence; (3) the government breached the plea agreement; (4) his sentence is too high; and (5) his counsel was ineffective.

The court begins its analysis of petitioner's claims with an overarching observation: it is not easy to vacate a guilty plea in a collateral proceeding like this one: "A defendant who knowingly and voluntarily enters a guilty plea admits not simply that he committed the acts charged in the indictment; it is an 'admission that he committed the crime charged against him.'" *Torzala v. United States*, 545 F.3d 517 (quoting *Young v. United States*, 124 F.3d 794, 797 (7th Cir. 1997) (citing *North Carolina v. Alford*, 400 U.S. 25, 32 (1970)); *see also United States v. Broce*, 488 U.S. 563, 570 (1989) (a defendant who pleads guilty admits that he is guilty of the substantive offense). Accordingly, when the judgment of conviction upon a guilty plea becomes final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. *Broce*, 488 U.S. at 570; *see also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (a guilty plea is constitutionally valid "if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant

circumstances and likely consequences'"). If the answer to that query is in the affirmative, then, as a general rule, the plea and conviction foreclose any collateral attack. *Broce*, 488 U.S. at 570.

Here, the petitioner attempts to frame most of his arguments as claims that his plea was not voluntary or knowing. For example, the petitioner argues that his plea was unknowing because he neither understood that the government had withheld exculpatory evidence, nor that it would be unable to prove the elements of the offense. "[E]ven the voluntariness and intelligence of a guilty plea," however, "can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). By failing to raise the majority of his claims in his direct appeal, the petitioner, therefore, procedurally defaulted most of his claims that he did not knowingly and voluntarily enter his plea of guilty.

An exception may apply to this general rule with respect to petitioner's claim to ineffective assistance of counsel. Additionally, although a claim that has been procedurally defaulted ordinarily may only be raised in a § 2255 proceeding if the defendant demonstrates that he is "actually innocent," or that there is "cause" and actual prejudice, *id.* at 622, because the government chose to respond on the merits, it has waived the procedural default. *Buggs v. United States*, 153 F.3d 439, 444 (7th Cir. 1998). Therefore, the court will group and address the merits of Rachuy's claims by general categories.

I.  **Claims Based on Petitioner's Argument that the Government Could Not Have Proven That He Stole the Pathfinder.**

The petitioner argues that his plea was not knowing or voluntary because he did not

understand at the time of his guilty plea that: (1) Kathy Sheff was not the "owner" of the vehicle under Minnesota law; (2) Ms. Sheff and local law enforcement failed to comply with certain Minnesota statutes relating to bad checks; (3) three out of five of his Bank of America accounts were actually open, not closed; and (4) he could have raised his intent to pay Ms. Sheff with cash at a later date as a defense. The petitioner argues that because the government would not have been able to prove each element of the offense of conviction, he is actually innocent of the offense. He also argues that because local law enforcement failed to comply with Minnesota law, this court lacked jurisdiction over the criminal case against him.

Unfortunately for petitioner, however, the record in this case belies any suggestion that his plea was not knowing or voluntary for any of the reasons offered. The petitioner pleaded guilty to a violation of 18 U.S.C. § 2312, which provides that a crime occurs when a person "transports in interstate or foreign commerce a motor vehicle . . . knowing the same to have been stolen." The term "stolen" as it is used in the statute "encompasses activities involving virtually any illegally acquired property, regardless of the specific means." *United States v. Natour*, 700 F.3d 962, 971 (7th Cir. 2012) (citing *United States v. Turley*, 352 U.S. 407, 417 (1957)). "Stolen" "may denote the criminal taking of personal property either by larceny, embezzlement, or *false pretenses*." *Turley*, 352 U.S. at 412 (emphasis added).

In this case, the charging document accurately sets forth these elements. Moreover, the petitioner admitted at the plea hearing that he had had sufficient time to talk with his counsel about the nature of the charge, the possible consequences of a plea of guilty and what the government could prove at trial. (Dkt. #90 at 5.) He also admitted at the plea hearing that the government could prove his guilt, including that he committed each of the elements of

the offense at trial. (*Id.* at 22.) Specifically, the petitioner admitted that he gave Ms. Sheff a check for the Pathfinder knowing there were no funds in the account on which the check was written, and never would be sufficient funds. By making these statements and pleading guilty, Rachuy gave up his right to hold the government to its proof or to raise defenses in a collateral attack on his conviction. *Torzala*, 545 F.3d at 524.

Even if not procedurally barred, the petitioner's arguments are meritless. Whether the vehicle was owned by Kathy Sheff or her husband, as petitioner now suggests, does not alter the fact that he knowingly took the vehicle in exchange for a worthless check. Relatedly, whether petitioner's bank accounts were opened or closed, he has never suggested that there was money in the account that would have covered the check. His recent assertion that he intended to pay Ms. Sheff in cash "at some point in the future" is also beside the point, because even under petitioner's version of events, he knowingly provided a worthless check to Ms. Sheff, thereby intentionally depriving the true owner of the vehicle without paying for it, even if only temporarily. Finally, the petitioner's citations to Minnesota statutes are completely irrelevant to the *federal* offense to which he pleaded guilty.

For all of these reasons, the petitioner's claims based on the theory that the government could not have proven that he intended to steal the vehicle are meritless and do not support a claim for relief under § 2255.

## II. Claims Based on the Governments Alleged Failure to Disclose Exculpatory Evidence.

Next, petitioner contends that the government intentionally withheld "exculpatory" evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In particular, the petitioner

9

claims the government should have disclosed:

(1) both Bank of America's "law enforcement referral" *and* "corrected law enforcement referral";

(2) evidence showing that his checking accounts were actually open;

(2) statements made by individual witnesses who were granted immunity to testify and who admitted to testifying falsely in previous proceedings, including Arelle Pickar-Butler;

(3) petitioner's computer, which was allegedly sold by a Duluth police department investigator and which contained exculpatory evidence; and

(4) CDs and DVDs showing that his property was being held in Duluth.

*Brady* held that during trial the government is constitutionally obligated to disclose evidence favorable to the defense, whether the evidence is material to the guilt or punishment of the defendant. *Id.* at 87. Less clear is whether, and to what extent, *Brady* applies outside the trial context. In *United States. v. Ruiz*, 536 U.S. 622, 630 (2002), for example, the Supreme Court held that the Due Process Clause does *not* require the government to disclose *impeachment* information before the entry of a criminal defendant's guilty plea. Indeed, in *Ruiz*, the Court noted that it had permitted courts to accept guilty pleas where the defendant lacked knowledge of many different circumstances, including the strength of the government's case, confirming that due process did not require prosecutors to disclose all information that might be of use to a defendant in deciding whether to plead guilty. *Id.* at 630-31.

In fairness, the Seventh Circuit has suggested that the government might still be required to disclose *exculpatory* evidence of a criminal defendant's factual innocence under *Ruiz* before he enters a guilty plea, but has not directly ruled on the issue. *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003). Assuming that this means petitioner *could* pursue a *Brady*

10

claim to prove that he did not enter his guilty plea knowingly and voluntarily, however, his claim *still* fails for the simple reason that the petitioner has identified *no* undisclosed evidence that would qualify as *exculpatory and material*.[1] So-called *Brady* evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

Here, again, petitioner maintains he would not have pleaded guilty if provided certain materials sooner, but none of the materials he identifies undermine the government's case against him. For example, he does not explain how the "law enforcement referrals" raise a question about his intent to write a worthless check to steal a car or subsequently transport a stolen vehicle across state lines. Nor does the fact that some of his checking accounts may have been technically "open," since the petitioner has never denied that the accounts contained *no* money to cover the check he wrote. With respect to alleged exculpatory statements from witnesses who would have testified against him at trial, petitioner has to date pointed to no one.

Finally, petitioner's arguments regarding the computer allegedly sold by a Duluth police investigator, and other property being held in Duluth, are entirely irrelevant to Rachuy's guilty plea in this case, as he fails to make any connection between alleged exculpatory evidence on the computer and the offense for which he was charged and pleaded guilty. The petitioner certainly has made no showing that the proceeding "would have been different" had he possessed any of the allegedly exculpatory materials before entering his guilty plea.

---

[1] The government also provided evidence showing that it either provided all of the materials discussed by petitioner or that the materials do not exist. Because petitioner's *Brady* claim fails for other reasons, the court need not resolve whether the government already provided these materials to Rachuy or his attorney.

Accordingly, petitioner's request to withdraw his guilty plea based on alleged withholding of exculpatory evidence will be denied.

### III. Claims Based on Government's Alleged Breach of Plea Agreement.

The petitioner further claims that he should be allowed to withdraw his guilty plea because the government breached the provisions of the plea agreement by failing to recommend that: (1) the court calculate the loss amount based only on the checks returned on the four bank accounts involved in the purchase of stolen vehicles; (2) recommend a 5-year term of imprisonment; and (3) recommend that he be given credit for time served in a related Minnesota conviction. Unfortunately for petitioner, these are the same claims he raised unsuccessfully on direct appeal, and he cannot raise them again in a motion under § 2255. *Olmstead v. United States*, 55 F.3d 316, 318 (7th Cir. 1995). Accordingly, these claims do not provide a basis for relief.

### IV. Claims that Sentence is Too High.

The petitioner next claims that his sentence is too high because: (1) the court erred by using his criminal record to justify an upward departure from the sentencing guidelines; and (2) a Minnesota court recently dismissed one of his convictions that was used to determine his sentence. These claims are meritless as well. One of the many factors that must be considered by the court in deciding on an appropriate sentence is "the nature and circumstances of the offense and the *history and characteristics of the defendant*." 18 U.S.C. § 3553(a)(1) (emphasis added). It was wholly appropriate for this court to consider Rachuy's lengthy criminal record in reaching a reasonable and appropriate sentence.

As for his claim regarding the dismissed Minnesota conviction, petitioner presents no evidence in support. Moreover, because the guidelines are advisory, ordinary errors in calculating a defendant's guidelines sentencing range do not justify postconviction relief. *Hawkins v. United States*, 706 F.3d 820, 823 (7th Cir.), opinion supplemented on denial of reh'g, 724 F.3d 915 (7th Cir. 2013)). Even if petitioner's claim was cognizable in a motion under § 2255, his claim would lack merit. Petitioner does not specify which Minnesota conviction was vacated, beyond stating that it was a conviction from St. Louis County. (Petition, (dkt. #1 at 9-D.) Presumably, petitioner is referring to his most recent conviction in St. Louis County Case No. 69DU-CR-10-3321. The presentence investigation report shows that *no* criminal history points were assessed for that conviction. Indeed, the presentence investigation report did not assess *any* criminal history points for a conviction out of St. Louis County. Moreover, the presentence investigation report reflects that the subtotal of petitioner's criminal history categories was 23, placing him in a criminal history category VI. Because 13 or more convictions puts a defendant in criminal history VI, one fewer conviction (which could add up to 3 criminal history points, at most) would not have changed the applicable guideline range, nor ultimately the court's sentence under 18 U.S.C. § 3553(a). Accordingly, petitioner has not shown that these claims entitled him to any relief under § 2255.

### V. Claims Based on Alleged Ineffectiveness of Defense Counsel

An ineffective assistance of counsel claim may be raised for the first time in a § 2255 proceeding, as Rachuy has here. *Torzala*, 545 F.3d at 524. To succeed on a claim that an attorney rendered ineffective assistance of counsel when a defendant entered a guilty plea, however, the defendant must show: (1) counsel's performance fell below an objective standard

of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. *Id.*; *see also Strickland v. Washington*, 466 U.S. 668 (1984). In his motion, petitioner argues that his counsel was ineffective by: (1) failing to request various exculpatory evidence from the government; (2) advising him to plead guilty despite knowing about exculpatory evidence; (3) failing to properly investigate the case; (4) telling him that pleading guilty would result in a 60-month sentence that would be further reduced by credit for state sentences; (5) failing to advocate for him at sentencing; and (6) failing to withdraw when faced with difficult family circumstances.

Rachuy's claims are without any factual support. First, Rachuy cannot succeed on a claim that counsel was ineffective for failing to investigate or request exculpatory evidence unless Rachuy can "prove that evidence uncovered during that investigation would have led the attorney to change [his or] her recommendation to accept the plea offer." *Warren v. Baenen*, 712 F.3d 1090, 1097 (7th Cir. 2013) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). This requires the petitioner to provide "the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004). Here, Rachuy concedes that his attorney received more than a thousand of pages of documents from the U.S. Attorney's office as part of discovery in this case. (Petition (dkt. #1) at 9, Br. (dkt. #4 at 3.) Rachuy argues, however, that his attorney failed to properly investigate the documents or to request exculpatory evidence that was hinted at in the documents. As the court has explained, Rachuy has not pointed to any "exculpatory" evidence that the government failed to disclose that would have

undermined the government's case against him. Similarly, he points to no specific, material evidence that he believes his attorney would have uncovered with further investigation. Rachuy only repeats his arguments that his attorney should have investigated Bank of America's "law enforcement referrals," statements by Bank of America employees, evidence regarding his checking accounts, statements by witnesses who may have testified against him, and evidence contained on CDs, DVDs and other property held by the Duluth police department. Again, however, Rachuy has pointed to nothing among this "evidence" that is actually exculpatory. Thus, nothing would have led a reasonable attorney to change his recommendation to Rachuy to plead guilty.

With respect to petitioner's arguments that counsel failed to explain the plea agreement properly, those arguments are belied by his own statements at the plea hearing, which are presumed truthful. *See United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998). In addition to petitioner's representation that he had sufficient time to discuss the agreement with his counsel, and disavowing any agreements or understandings with the government beyond its written terms, the court thoroughly went over the plea agreement and the government's proposed case to ensure Rachuy understood the consequences of his plea. In particular, Rachuy was advised that I would not be able to determine the impact of the guidelines for sentencing purposes until after the presentence report was prepared and I'd ruled on the objections of the parties, and that his ultimate sentence may differ from the parties' joint recommendation. In short, the record shows Rachuy was aware of the consequences and benefits of entering into the plea agreement and decided to plead guilty knowingly and voluntarily. In any event, there is no evidence that his counsel was ineffective with relation to

Rachuy's plea agreement.

The court likewise rejects the argument that counsel was ineffective by failing to advocate for him at sentencing. The transcript of the sentencing hearing shows that Rachuy's counsel argued for a 60-month sentence. While this court concluded that a 60-month sentence was too low, it was not because of any failure by petitioner's counsel to advocate, but based on his own actions and extensive criminal history. Counsel is not to blame for Rachuy's extensive history of defrauding people, nor could he argue it away.

Finally, petitioner's suggestion that counsel should have withdrawn because of counsel's family situation is completely unsupported and without merit. Because petitioner has provided no grounds to support his claims, there is no basis on which to conclude that counsel should have withdrawn.

In short, all of Rachuy's claims that his counsel was ineffective are based solely on bald assertions that are either patently not true or at least without support in the record. "An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct." *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001); *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005)(finding that a claim of ineffective assistance unsupported by "actual proof of [his] allegations" cannot meet the threshold requirement for the purposes of a § 2255). Accordingly, his request for relief will be denied.

## VI. Rachuy's Discovery Requests and Request for an Evidentiary Hearing.

Finally, Rachuy filed several motions to compel discovery and related requests for an evidentiary hearing. (Dkt. ##3, 11, 12, 24). "A habeas petitioner, unlike the usual civil

litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, under Rule 6 of the Rules Governing § 2255 Proceedings, a court may authorize discovery if "good cause" is shown. Good cause exists "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Id.* at 909 (quoting *Harris v. Nelson*, 394 U.S. 286 (1969)). In contrast, "[g]ood cause cannot exist where the facts alleged do not provide a basis for relief." *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990).

Here, for the reasons discussed above, Rachuy's allegations provide no basis for relief, nor to believe that discovery would change that fact. His allegations also create no factual dispute that requires an evidentiary hearing. Accordingly, his motions to compel discovery and for a hearing will be denied as well.

VII.   **Certificate of Appealability.**

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one. For the reasons stated above, reasonable jurists would not debate whether defendant's claims are meritless. Therefore, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

1. Defendant Gale A. Rachuy's motion under 28 U.S.C. § 2255 is DENIED.

2. Defendant's motions to supplement and amend his petition and briefs (dkt. ##15, 17, 19, 20, 26) are GRANTED.

3. Defendant's motions to compel (dkt. ##3, 11, 12); motions for release from custody (dkt. ##10, 13); motion for an evidentiary hearing (dkt. #24), and motion for sanctions (dkt. #28) are DENIED.

4. A certificate of appealability is also DENIED. Defendant may, if he wishes to do so, seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 12th day of April, 2016.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge